UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER SHAWN ROOKS, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:15-cv-00079-SEB-DML |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**Entry Discussing Motions for Summary Judgment**

Plaintiff Christopher Shawn Rooks, a federal prisoner, was assaulted by another prisoner while confined at the United States Penitentiary in Terre Haute, Indiana (the "USP Terre Haute") on January 8, 2014. Rooks claims that the attack occurred due to a breakdown in security when Demarco Releford, an inmate housed in the E-2 unit, was allowed access to the Gold Corridor, at the same time as him, an inmate housed in the D-2 unit. Rooks further contends that BOP staff acted negligently by not being attentive to duty and not properly monitoring the Gold Corridor during the mainline movement. Rooks has sued the United States pursuant to the Federal Tort Claims Act ("FTCA") to recover damages for his injuries.

The United States moves for summary judgment, arguing that Rooks' claims are barred by the discretionary function exception to the FTCA's waiver of sovereign immunity. See 28 U.S.C. § 2680(a). The United States further argues that even if Rooks' claims were not barred by this exception, his negligence claim fails as a matter of law. Rooks has responded by filing a cross motion for summary judgment and the United States has replied. For the following reasons

1

explained below, the motions for summary judgment, dkts. [51] and [59] are **denied** and this action will be resolved through settlement or a bench trial.

## I. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

## II. Statement of Undisputed Facts

The following material facts are not genuinely in dispute and will be treated as established in this case consistent with Rule 56(g) of the *Federal Rules of Civil Procedure*.

**USP Terre Haute**

The Federal Correctional Complex in Terre Haute, Indiana ("FCC") consists of the high security United States Penitentiary ("USP"), the medium security Federal Correctional Institution, and the Federal Prison Camp. USP Terre Haute is made up of four corridors, each of which is associated with a particular color. As relevant to this action, the West Corridor is also known as the Green Corridor and contains, among other areas, the dining hall and UNICOR (the trade name for the Federal Prison Industries). The South Corridor is known as the Gold Corridor and contains the D-1, D-2, E-1, E-2, F-1, and F-2 housing units.

**Relationship Between Rooks and Releford**

Prior to January 8, 2014, Demarco Releford never made any threats against Rooks. In fact, according to Rooks, both he and Releford were a part of the "West Coast table" and would sometimes sit at the same table. Rooks was not afraid of anybody, including Releford, and, before January 8, 2014, had no reason to believe that Releford would assault him.

**Assault on January 8, 2014**

On Wednesday, January 8, 2014, Rooks was housed in the D-2 Unit, and Releford was housed in the E-2 Unit, both of which were on the south side—or Gold Corridor—of USP Terre Haute.

Jared Hamblin was a Senior Officer assigned as the USP D-2 officer on this day. As the D-2 officer, Officer Hamblin's duties included providing supervision to the inmates, maintaining security, contributing to the health and welfare of the inmates, and insuring inmate accountability.

On January 8, 2014, at approximately 7:10 a.m., while Officer Hamblin was monitoring traffic in the Gold Corridor as the Unit D-2 officer, he observed Rooks enter the D-2 Unit with

blood on his face and clothing. Officer Hamblin secured Rooks in his cell and notified the Operations Lieutenant.

Shortly thereafter, Special Investigative Services ("SIS") Lieutenant Jamie Baker was informed that Rooks had been found by the unit officer with injuries consistent with having been in a physical altercation. Nice Vision surveillance footage recorded the altercation. SIS Lieutenant Baker recovered the homemade weapon involved in the altercation.

**Case Manager Eisele**

On Wednesday, January 8, 2014, Case Manager Rebekka Eisele was working as a Case Manager for the D-2 Unit. At approximately 7:06 a.m. that morning, she did not see the altercation between Rooks and the other inmate.

**BOP Post Orders**

Post Orders for assignments within USP Terre Haute consist of five categories of documents—Special Instructions, which are guidelines for the assignment; Specific Post Orders, which provide time frames for events that should occur each day; General Instructions, which provide guidelines for the institution; Program Statements, which set forth the policies for particular topics, such as the SHU; and signature pages. Each housing unit within USP Terre Haute has Specific Post Orders for the officer assigned to that unit, which set forth time frames for certain events to occur each day, including the completion of the morning meal.

On January 8, 2014, there were Specific Post Orders for the USP D-2 officer, the USP E-2 officer, the D-2 #2 Housing Unit, and the E-2 #2 Housing Unit. Each of these Specific Post Orders provide that at approximately 7:00 a.m., the morning meal for D-2 and E-2 inmates is to

be completed.[1]

On the morning of January 8, 2014, there was adverse weather in the form of a snow emergency. Consistent with the guidance provided by the FCC's Complex Captain, inmates were to be moved through the secure corridor in response to this adverse weather event.[2]

### III. Material Facts in Dispute

The following material facts in dispute make summary judgment for either party inappropriate.

**Inmate Movement in Secure Corridor**

Whether the Secure Corridor Operations Memorandum created a mandatory procedure requiring that inmates be moved through the secure corridor in small groups, only one unit at a time is a material fact in dispute. See dkt. 54-6. If so, then Releford, an inmate housed in E-2, should have been prohibited from being in the same corridor as Rooks, an inmate housed in D-2, at approximately 7:06 a.m., as they walked back from the dining hall after the morning meal.

The United States with the supporting Declaration of Lieutenant Bernard Halloran at Dkt. 54-1 at ¶ 14, states that instructions did not apply when inmates were returned to their housing

---

[1] The United States has filed this statement under seal on the basis that the release of this information would be detrimental to the safety and security of the facility. This argument is rejected as to this particular statement. This statement will no longer be kept confidential. The fact that the inmates' breakfast meal is concluded at approximately the same time each day is by its very nature not secretive. This is not a circumstance of which the inmates would be unfamiliar. Even children in elementary school know approximately what time lunch ends every day.

[2] The United States has filed under seal a more detailed version of this same statement. The additional details are not material and given the plaintiff's personal experience of being moved through the secured corridor during the snow emergency the information in this Entry cannot be considered secret. Moreover, Rooks was attacked in the secured corridor so the fact that the inmates were directed to move through the corridor on the date in question is not a fact which should have been filed under seal, even if the supporting documentation was properly submitted with restricted access.

units. This interpretation of the Memorandum cannot be accepted at the summary judgment stage, because the plain reading of the Memorandum does not limit the term "move" to only one direction. This interpretation was not provided by the author of the Memorandum, nor does Lt. Halloran provide an explanation for why the guidance should be understood to move the inmates by housing units in one direction or not another and it is not appropriate for the Court to speculate. A reasonable trier of fact could find Lt. Halloran not credible given the plain language of the memorandum.

**Staff Assignments**

There is a material fact in dispute regarding whether staff members were staged at the locations specified in the Special Instructions for the USP Operations Lieutenant in effect on January 8, 2014. Dkt. 54-7 at 4. According to the Daily Assignment Roster from January 8, 2014, the custody staff on duty at 7:06 a.m. and whose assignments would be relevant are Operations Lieutenant Parker, Activities Lieutenant Rodriguez, and West Corridor Officer Booth.

**IV. Federal Tort Claims Act**

The Federal Tort Claims Act (FTCA) gives district courts exclusive jurisdiction over claims "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *see also* 28 U.S.C. § 2674. Prisoners can sue under the FTCA "to recover damages from the United States Government for personal injuries sustained during confinement

in a federal prison, by reason of the negligence of a government employee." *United States v. Muniz*, 374 U.S. 150, 150 (1963).

## V. Discussion

The United States seeks summary judgment on two bases. First, The United States argues that the claims that Rooks advances in this action are barred by the discretionary function exception. Second, the United States contends that Rooks cannot establish the required elements of a negligence claim. Rooks seeks summary judgment suggesting that the undisputed facts reflect that the United States is liable to him. The United States has the burden of proving its affirmative defense, but Rooks has the burden of proving his negligence claim.

**Discretionary Function Exception**

Rooks alleges that BOP employees were negligent by allowing Demarco Releford access to the Gold Corridor at the same time Rooks was in the corridor on the morning of January 8, 2014, resulting in his assault. He further contends that BOP staff acted negligently by not being attentive to duty and not properly monitoring the Gold Corridor during the mainline movement.

The FTCA is a limited waiver of the United States' sovereign immunity. *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012) (*citing Dolan v. United States Postal Serv.*, 546 U.S. 481, 484 (2006)). In it, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees in certain circumstances, subject to various exceptions. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008). One such exception is the discretionary function exception, which maintains sovereign immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the party of a federal agency or an employee of the Government, whether or not the discretion

7

involved be abused." See 28 U.S.C. § 2680(a). The discretionary function exception is an affirmative defense to liability under the FTCA that the government must plead and prove. *Keller v. United States,* 771 F.3d 1021, 1023 (7th Cir. 2014) (*citing Parrott v. United States*, 536 F.3d 629, 634–35 (7th Cir. 2008); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir. 1952); *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 n. 2 (3d Cir. 2012) (collecting cases from other circuits)). To support summary judgment under the exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception. *Id.*

The discretionary function exception has two elements. *Calderon v. United States*, 123 F.3d 947, 949 (7th Cir. 1997). "First, a discretionary act must be involved. In other words, the act for which liability is sought to be imposed must involve 'an element of judgment or choice.'" *Id.* (*quoting United States v. Gaubert*, 499 U.S. 315, 322 (1991)). In addition, "'even assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield.'" *Id.* (*quoting Gaubert*, 499 U.S. at 322). "[T]he exception protects only governmental actions and decisions based on considerations of public policy." *Id.*

The United States argues that the discretionary function exception shields it from liability. Specifically, the United States argues that Rooks has not identified any mandatory duty with which the BOP failed to comply. But it is the United States' burden to prove its affirmative defense and it cannot do so given the material facts in dispute identified above and considered in the light most favorable to Rooks, the non-movant in this instance.

The defendant states that the Special Instructions and Post Orders are simply guidelines to be considered but not necessarily followed. Perhaps that position will be persuasive at trial, but at this point in the proceedings the Secure Corridor Operations Memorandum and Special Instructions discussed above could be understood by a reasonable trier of fact viewing the evidence in the light most favorable to Rooks to establish mandatory procedures or directives which BOP employees were expected to follow (particularly in the absence of any individualized evidence which reflects that a particular employee deviated from the procedures while exercising their discretion). *See Keller v. United States*, 771 F.3d 1021, 1025 (7th Cir. 2014). In the alternative, the evidence could be interpreted to reflect that the United States is entitled to prevail on its affirmative defense. For example, it is disputed whether the Secure Corridor Operations Memorandum prohibited the situation in which Rooks and Releford were in the same hall at the same time. It is also disputed whether the Special Instructions required that a BOP employee to be staged where the altercation occurred. For these reasons, neither party is entitled to judgment as a matter of law.

**Negligence Claims**

The United States next argues that even if the discretionary function exception does not apply to Rooks' claims, his claims fail on their merits.

State tort law of the state where the tort occurred, in this case Indiana, applies when determining "whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States*, 536 F.3d 629, 637 (7th Cir. 2008). Under Indiana law, a "plaintiff seeking damages for negligence must establish (1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Kader v. State Dept. of Correction*, 1 N.E.3d 717, 727 (Ind. Ct. App. 2013).

Under Indiana law, when a party is in custody, "the custodian has the duty to exercise reasonable care to preserve the life, health, and safety of the person in custody." *Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998). "The appropriate precautions will vary according to the facts and circumstances presented in each case." *Id.* The duty is to "take reasonable steps under the circumstances" to protect an inmate from harm. *Id.*

The United States argues that it is entitled to summary judgment because Rooks has failed to present any evidence that BOP breached a duty of care owed to him or that any purported breach proximately caused his damages.

The duty owed by the United States is also created by 18 U.S.C. § 4042, which provides, in relevant part, that the BOP shall "(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, ... ; [and] (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States...." 18 U.S.C. § 4042(a)(2), (3). Although written in general terms, the statute "sets forth a mandatory duty of care." *Parrott*, 536 F.3d at 637 (internal quotation omitted).

Liability is not imposed every time an inmate is attacked by another inmate. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Although § 4042 imposes a duty on the BOP to exercise ordinary diligence to keep federal inmates safe and free from harm, under this standard, "correctional officers are expected to use ordinary care to protect prisoners from unreasonable risks, not to provide them with a risk-free environment." *Clay v. United States*, No. 05-cv-599-KKC, 2007 WL 2903105, at *9 (E.D. Ky. Sept. 28, 2007) (*citing Fleishour v. United States*, 365

F.2d 126, 128-29 (7th Cir. 1966)). Thus, the determinative issue is whether the BOP took reasonable steps under the circumstances to preserve Rooks' health and safety.

Whether BOP staff used reasonable care to preserve Rooks's safety on January 8, 2014, is a material fact in dispute. This finding is a result of the material facts in dispute, one of which is whether BOP employees disregarded a mandatory post order or procedure which prohibited Releford from being in the same corridor as Rooks at the time of the attack. In addition, there is a material fact in dispute regarding whether the Operations Lieutenant failed to stage a staff member at the corner of the Green and Gold Corridor near Gate 6 consistent with BOP procedures. If there was a breach of a mandatory procedure then a reasonable fact finder could conclude that the injuries sustained in the attack were proximately caused by the breach of duty.

## VI. Conclusion

For the reasons stated above, the defendant's and plaintiff's motions for summary judgment, dkts. [51] and [59] are **denied**.

If the plaintiff seeks the court's assistance recruiting counsel to represent him for the purposes of settlement and trial, he should notify this Court by filing a motion for assistance recruiting counsel by no later than **June 22, 2017**. Counsel would be particularly beneficial to the orderly progression of the bench trial.

Date: ___6/15/2017___   _____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

CHRISTOPHER SHAWN ROOKS
REG NO 05919-031
POLLOCK U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 2099
POLLOCK, LA 71467